# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, | No. 4:17-CV- 02099 |
| | (Judge Brann) |
| Plaintiff, | |
| v. | |
| KIM EAGAN WOODS, | |
| Defendant. | |

## MEMORANDUM OPINION

### JUNE 11, 2019

### I. BACKGROUND

This matter was initiated by the filing of a complaint by State Auto Property and Casualty Insurance Company on November 15, 2017. Following the completion of discovery, Defendant Kim Eagen Woods[1] filed a motion for summary judgment. The motion is now ripe for disposition; for the reasons that follow, it is denied.

### II. DISCUSSION

#### A. Standard of Review

I begin my analysis with the standard of review which undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to

---

[1] Now by marriage Kim Moretz.

isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[2] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[6]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based

---

[2]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[3]   Fed. R. Civ. P. 56(a).

[4]   *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

[5]   *Clark*, 9 F.3d at 326.

[6]   *Id*.

[7]   *Liberty Lobby, Inc.*, 477 U.S. at 252.

on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[9] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[10] The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[11] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates

---

[8] *Id.*

[9] *Id.*

[10] *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

[11] *Celotex*, 477 U.S. at 323 (internal quotations omitted).

that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[12]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[13] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[14]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[15] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact

---

[12] *Id.*

[13] *Liberty Lobby*, 477 U.S. at 250.

[14] Fed. R. Civ. P. 56(c)(1).

[15] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

undisputed for purposes of the motion."[16] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[17]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[18] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[19] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[20]

### B. Undisputed Facts

On March 6, 2016, a fire originated in a first-floor apartment in Lewisburg, Union County, Pennsylvania occupied by Defendant Woods and insured by Plaintiff State Auto. State Auto filed the instant subrogation action alleging the Woods's negligently lit cigarette was the cause of the fire. State Auto's basis for this allegation is, in part, the conclusion of an investigation performed by David B. Klitsch.[21]

---

[16] Fed. R. Civ. P. 56(e)(2).

[17] Fed. R. Civ. P. 56(c)(3).

[18] *Liberty Lobby*, 477 U.S. at 249.

[19] *Id*.

[20] *Id*. at 249–50 (internal citations omitted).

[21] Both parties have attached this report as an exhibit.

## C. Analysis

Curiously, although Woods takes issue with State Auto's expert, it does not appear from her motion or brief that she is either moving to exclude the expert report or to preclude the Mr. Klitsch's testimony under *Daubert* and its progeny.[22] This seems particularly odd, given that the case Woods relies heavily on in making her argument in support of summary judgment, *State Farm Fire & Cas. Co. v. Steffen*,[23] held that the expert report was excluded following a full *Daubert* hearing.[24] Instead, Woods argues here that "the only issue for this court is whether plaintiffs have produced evidence through its witness Klitsch to support its burden of proving that defendant [Woods] negligently caused the fire with smoking materials."[25] State Auto counters that: "There is a clear dispute of material fact making summary judgment improper. It is Plaintiff's position that the fire at issue was caused by the Defendant's negligent use of cigarettes inside the property. Defendant argues that the fire was caused by a lamp."[26]

---

[22] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). State Auto found this to be puzzling as well. *See* Plaintiff's Brief in Opposition, ECF No. 37 at 8

[23] 948 F. Supp. 2d 434, 438 (E.D. Pa. 2013) (Dalzell, J.).

[24] *Id.* at 442.

[25] Defendant's Supporting Brief, ECF No. 36 at 7.

[26] Plaintiff's Opposing Brief, ECF No. 37 at 1.

It is, of course, well-established that "Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment."[27] "Causation is an essential element of a prima facie negligent fire claim under Pennsylvania law."[28]

In this matter, the expert report produced by Mr. Klitsch, in combination with Plaintiff's other expert report from Michael Wald, an electrical engineer,[29] is sufficient to set forth a prima facia case of negligence sufficient to survive the instant summary judgment motion.

Mr. Klitsch's report lists the materials he relied upon in forming his opinion, including the depositions of Defendant Woods and of Kevin Gardner, the landlord of the property. He also reviewed the fire department's report, Woods's discovery responses, and the expert report prepared by Mr. Wald. Additionally, Mr. Klitsch

---

[27] *Steffen*, at 438.

[28] *Id. citing See Propert v. Flanagan,* 277 Pa. 145, 120 A. 783, 783 (1923) ("[t]he law does not require proof by direct evidence that a fire was caused in a particular way, but it is necessary to establish, not only that it could possibly come from the cause assigned, but that [it] was the probable and natural cause"); *see also Marrazzo v. Scranton Nehi Bottling Co.,* 422 Pa. 518, 223 A.2d 17, 23 (1966) *(citing Propert ); Lanza v. Poretti,* 537 F.Supp. 777, 783 (E.D.Pa.1982) (arising under Pennsylvania law and "recogniz [ing] that a plaintiff in a fire case where careless smoking is alleged to be the cause can rarely do more than present expert testimony as to the fire's cause, and support such testimony by some evidence of smoking on the premises shortly before the fire began. This will usually make out a case of negligence sufficient to put the defendant to proof.").

[29] ECF No. 37-2.

examined the scene four-days after the fire. He began with an exterior scene examination[30] then proceeded to an interior scene examination.

Mr. Klitsch's interior scene examination documented and demonstrated that the fire began in the "media room" in the "dresser area." He reported that "the remains of the wooden dresser were examined, however the fire [had] consumed much of the dresser." "Fire patterns [also] indicate the fire originated on or at the dresser." He further noted that "The outlet to the rear of the dresser in which the lamp was plugged into, was located at an approximate height of 14" from floor level. "I examined the line cord associated with the lamp that was plugged into the wall outlet. I located an area on the cord, approximately 12" from the plug end, that had electrical activity consisting of beading and the welding together of the stranded conductors. This area was consistent with fire attack and not causal."

Woods also noted four glass jar candles in the apartment, a lighter, and ten empty packs of cigarettes within the apartment.[31] Woods acknowledged to non-party Allstate Insurance Company's fire investigator that the cigarettes, Marlboro 100s, are the brand that she smokes.

---

[30] Despite the explicit exterior scene examination description on page 2 of Mr. Klitsch's 32 page report, Woods asserts that Mr. Klitsch did not examine the exterior of the property. *See* ECF No. 33 at p. 3 ¶ 8a.

[31] Along with multiple empty liquor bottles. .

In addition to reading his deposition, Mr. Klitsch also interviewed the landlord, Kevin Gardner. Mr. Klitsch noted accordingly:

> He told me that Joe Meehan had arrived to visit the second-floor tenants on March 5, 2016, and when he walked inside the building he smelled smoke. Mr. Meehan looked around outside and saw smoke coming from the first-floor entrance door. Mr. Meehan went down to the door and saw the blinds melting. He opened the door and a dog ran out. 911 was called to report the fire. Mr. Meehan noticed Kim's car in the parking lot and then heard moaning. He observed her by the interior doorway at which time she fell to the floor. He then drug her outside and away from the building. Mr. Gardner told me that he called Kim the day following the fire and she said that she did not remember what happened.

Mr. Klitsch contacted Pennsylvania State Police Deputy Fire Marshal Kirk Renn, who also determined that the fire originated in the media room. Mr. Klitsch further reviewed Woods's deposition testimony, including her acknowledgment that she typically smoked a cigarette in the evening around 7:30 p.m. She also testified that she went to bed on the night of the fire at around 8:00 p.m. and had fallen asleep in the media room. She also, inconsistent with her blood test by the Pennsylvania State Police, denied drinking alcohol on the day of the fire.[32] She further denied ever smoking inside the apartment.

Mr. Klitsch's evaluation of the data found, *inter alia*:

> The fire clearly originates in the media room with the tenant being present within this room at the time of ignition. The tenant states that upon waking up in the bed, she encountered smoke only, no fire. This

---

[32] The Pennsylvania State Police determined that Woods had a blood alcohol level of .33 the evening of the fire.

would indicate a smoldering fire event, consistent with a cigarette ignition. A candle ignition typically results in flaming combustion of nearby target fuels and a rapidly spreading fire based on fuel packages within the compartment. The tenant indicates that she was treated for smoke inhalation as a result of being in the room at the time of the fire. She offers no testimony regarding sustaining any thermal injuries as a result of this fire. This information also supports a smoldering type of fire…The line cord for the dresser lamp sustained fire damage and abnormal electrical activity was noted midline on the cord. This electrical activity is consistent with fire attacking the cord and being a victim of the fire, not the cause. The tenant states that she is a smoker (Marlboro) and cigarette packs were located throughout he property. I located a pack of cigarettes on the desk within the media room….The fire department is dispatched at 8:05 PM. The tenant stated that she would routinely have a cigarettes around 7:30 PM.

Mr. Klitsch then continued to consider five hypotheses: candle ignition, smoking material ignition, electrical ignition of the dresser lamp, electrical ignition of the wall outlets, and a fire intentionally set by the tenant. He continued to thoroughly detail why smoking materials were the only likely cause of the fire and explained the research materials that he relied upon to come to this conclusion.

I find, then, that Mr. Klitsch's conclusions, based on his observations, investigation, and known facts that the fire was the result of cigarettes is sufficient prima facie evidence of negligence to survive summary judgment. Moreover, even if Woods had moved to exclude the expert, I would have been disinclined to grant such a motion given that "exclusion of expert testimony is the exception, rather than the rule, because 'vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"[33]

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[33] *Allstate Ins. Co. v. Anderson*, No. CV 15-2651, 2016 WL 2939506, at *2 (E.D. Pa. May 20, 2016), amended, No. CV 15-2651, 2016 WL 2997675 (E.D. Pa. May 23, 2016) quoting Fed. R. Evid. 702 (advisory committee notes) (*citing Daubert*, 509 U.S. at 595).